IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

In re Subpoenas to
GARY FISCHMAN and
ACACIA RESEARCH GROUP, LLC          Civil Action No. ____-mc-____

---

**GARY FISCHMAN'S AND ACACIA RESEARCH GROUP, LLC'S
JOINT MOTION TO QUASH SUBPOENAS AND
JOINT MOTION FOR SANCTIONS**

---

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................................1

II. JURISDICTION ...................................................................................................................3

III. FACTUAL BACKGROUND................................................................................................4

IV. ARGUMENT AND AUTHORITIES ...................................................................................8

    A. Rule 45 Mandates Quashing or Modifying Unduly Burdensome Subpoenas............8

    B. The Subpoenas Are Harassing.....................................................................................8

        1. Issuance of the Subpoenas Violated Schlumberger's Discovery Obligations in the Underlying Infringement Action.........................................8

        2. The Subpoenas Seek Documents Purportedly Relevant to a Motion on Which Briefing Is Already Closed in Circumvention of the Automatic Discovery Stay in the State Action Against Ms. Rutherford...........................9

        3. The Subpoenas Seek Irrelevant Documents From No Less Than Six Affiliated Acacia Entities and Individuals, in Addition to Plaintiff's Lead Counsel and Lead Counsel's Firm................................................................10

    C. The Subpoenas Are Overly Broad and Unduly Burdensome in Seeking Any Communications Concerning Ms. Rutherford at Any Time and All Documents Concerning the Corporate Structure of Non-Party ARG and Its Affiliates..............10

    D. Schlumberger's Continuing Harassment Warrants Further Sanctions......................12

    E. This Court Has Jurisdiction to Quash the Duplicate Subpoena to Acacia Research Group, LLC. ..............................................................................................................12

V. CONCLUSION ...................................................................................................................14

## TABLE OF AUTHORITIES

**CASES**

*J.K. & Susie L. Wadley Research Inst. & Blood Bank v. Morris*,
    776 S.W.2d 271, 278 (Tex. App-Dallas 1989) ................................................................. 11

*Mattel, Inc. v. Walking Mountain Prods.*,
    353 F.3d 792 (9th Cir. 2003) ....................................................................................... 8, 12

*Turnbow v. Life Partners, Inc.*,
    No. 3:11-CV-1030-M, 2013 WL 1632795 (N.D. Tex. Apr. 16, 2013) ......................... 8, 12

*Wiwa v. Royal Dutch Petroleum Co.*,
    392 F.3d 812 (5th Cir. 2004) ............................................................................................. 8


**RULES**

FED. R. CIV. P. 45 ................................................................................................................... 3

FED. R. CIV. P. 45(c)(2)(A) ................................................................................................... 13

FED. R. CIV. P. 45(c)(3)(D)(iv) ............................................................................................. 13

FED. R. CIV. P. 45(d) .............................................................................................................. 8

FED. R. CIV. P. 45(d)(1) .................................................................................................... 3, 12

FED. R. CIV. P. 45(d)(3) ...................................................................................................... 3, 8

FED. R. CIV. P. 45(d)(3)(A)(iv) .............................................................................................. 8

Gary Fischman and Acacia Research Group, LLC ("ARG," and collectively with Mr. Fischman, the "Movants") respectfully request that this Court enter an order quashing two subpoenas issued to Movants by Schlumberger Limited ("Schlumberger"). The subpoenas demand production of documents allegedly related to Schlumberger's fully-briefed motion to disqualify the plaintiff's counsel (and others) in a patent infringement action—*Dynamic 3D Geosolutions, LLC v. Schlumberger Limited, et al.*, Case No. 1:14-cv-00112-LY—currently pending against Schlumberger in the Western District of Texas (the "Infringement Action"). As discussed herein, Schlumberger has issued subpoenas to *eight* non-parties, including Movants, for identical categories of documents that are not relevant to the underlying Infringement Action. The documents are sought to further the harassment that began with Schlumberger's separate, discredited state court action against one of the other subpoenaed non-parties who, like Mr. Fischman, is an ARG employee. These unduly burdensome subpoenas should be quashed.

## I.   INTRODUCTION

ARG subsidiary Dynamic 3D Geosolutions, LLC ("Dynamic 3D Geo" or "Plaintiff") filed the Infringement Action against Schlumberger in February 2014.[1] Schlumberger immediately embarked on a retaliatory suit in Texas state court ("State Court") against Charlotte Rutherford, a former Schlumberger employee now working for ARG, alleging misappropriation of trade secrets, conversion, breach of fiduciary duty, and theft.[2] The State Court dismissed each of Schlumberger's aforementioned claims under Texas's "Anti-SLAPP" statute because Schlumberger could not establish clear and specific evidence in support of its claims, despite having obtained discovery in the State Court case, including deposing Ms. Rutherford.[3] Indeed, Judge Sandill of the 127th Judicial District Court in Harris County sanctioned Schlumberger in the amount of $250,000 for bringing that suit. Judge Sandill further awarded Ms. Rutherford $350,000 in attorneys' fees and costs.[4]

---

[1] Ex. 1 (Dynamic 3D Geo's Complaint in Infringement Action filed February 4, 2014).
[2] Ex. 2 (Schlumberger Original Petition in State Court action).
[3] Ex. 3 (Ms. Rutherford's Anti-SLAPP Motion in State Court action) at 1-4.; Ex. 4 (Order of Dismissal in State Court action).
[4] Ex. 4 (Order of Dismissal in State Court action).

Apparently, *$600,000 in monetary penalties was not a sufficient deterrent*. Under the guise of a motion to disqualify Plaintiff's counsel in the Infringement Action (and, somehow, to dismiss the entire action on that purported basis), Schlumberger is continuing its retaliatory tactics.[5] That motion also seeks to "disqualify" Ms. Rutherford, every lawyer employed internally by ARG (including Mr. Fischman), and everyone else involved with prosecuting the Infringement Action—*based on the same nucleus of alleged facts for which Schlumberger has been severely sanctioned in its State Court case against Ms. Rutherford*.[6] Under the pretext of the disqualification motion, Schlumberger's subpoenas seek potentially hundreds of privileged documents concerning the Infringement Action against Schlumberger.[7]

Making matters worse, the groundless disqualification motion in the Infringement Action is already fully briefed, so the subpoenas are futile.[8] Although the court in that action contemplated that the parties would confer about exchanging information that could be relevant to the court's decision on the disqualification motion, it made clear that the parties needed to first "get on the phone with one another and try to work out what you really think you're going to need" and cautioned Schlumberger "not to overreach on…. really broad-based discovery."[9] In issuing harassing and overly broad subpoenas to eight third parties without even trying to confer with Plaintiff or anyone else first, Schlumberger has violated both directives. As a result, its offer made in the last several days to "narrow" the subpoenas are too little, and much too late.

Movant Mr. Fischman is Ms. Rutherford's colleague here in Houston.[10] Both are employed by movant ARG, which maintains an office here.[11] The other third parties related to ARG that were needlessly targeted with identical subpoenas include Acacia Research Corporation ("Acacia"), a holding company and ARG's corporate parent, Matthew Vella, Acacia's CEO, and Acacia Technologies, LLC, another wholly-owned Acacia subsidiary, all of whom are in

---

[5] Ex. 5 (Schlumberger's Disqualification Motion in Infringement Action).
[6] Ex. 6 (Dynamic 3D Geo's Opposition to Disqualification Motion in Infringement Action).
[7] Ex. 7 (Subpoena to Mr. Fischman); Ex. 8 (Subpoena to ARG).
[8] Ex. 12 (Fischman Declaration).
[9] Ex. 13 (Transcript of August 12, 2014 Hearing) at 37:18-19; Ex. 14 (Transcript of April 22, 2014 Hearing) at 14:18-20.
[10] Ex. 12 (Fischman Declaration) ¶ 2.
[11] *Id.* ¶ 2.

California.[12]  Even if Schlumberger was on a legitimate quest for information, these subpoenas are purely cumulative and are intended to further irritate Plaintiff Dynamic 3D Geo (another Acacia affiliate) in the underlying Infringement Action.  Remarkably, Schlumberger has also issued identical subpoenas to the Collins, Edmonds law firm, Plaintiff's outside counsel in the ongoing infringement action, and to Michael Collins (Plaintiff's lead counsel) personally.  Collins Edmonds and Mr. Collins, like Ms. Rutherford, also filed a motion to quash in this Court on September 26, 2014 (Cases No. 4:14-mc-02316 and 14-mc-02315).[13]

Rule 45 mandates that the Court quash or modify unduly burdensome subpoenas.  Here, the subpoenas issued to Mr. Fischman and ARG are unduly burdensome because they request privileged documents that are not relevant to the underlying Infringement Action, because they request essentially duplicate sets of documents from eight different entities and individuals, and because they are overbroad on their face.  To spare Mr. Fischman and ARG from the undue burden imposed by these subpoenas, Movants respectfully request that the Court quash the identical subpoenas to them and award appropriate sanctions.

## II.   JURISDICTION

Mr. Fischman, ARG's Vice President of Licensing, is resident in ARG's Houston office and lives in Houston.[14]  Schlumberger has served Mr. Fishman and ARG with identical subpoenas that ultimately would require production of documents in Houston were they enforceable.  Therefore, this Court is the proper forum for this joint motion to quash.  FED. R. CIV. P. 45(d)(1), (3). [15]

---

[12] Ex. 9 (Subpoenas to Acacia Research Corporation, Acacia Technologies, LLC and Matthew Vella).
[13] Ex. 15 (Collins Edmonds Motion to Quash); Ex. 17 (Rutherford Motion to Quash).  The Motion to Quash filed by Collins Edmonds has been transferred to the Western District of Texas by agreement.  Movants believe that this Motion addresses substantially similar issues as the Motions to Quash filed by Ms. Rutherford and Collins Edmonds, and have designated this Motion as a related proceeding.
[14] Ex. 12 (Fischman Declaration) at ¶ 2.
[15] Mr. Fischman's subpoena commands production in Houston.  ARG's subpoena, containing document requests identical to those in the subpoenas issued to its employees and the Collins Edmonds firm, commands production in Dallas.  As explained below in Section IV.E., this Court nevertheless has jurisdiction to grant relief to ARG because this district is, for all meaningful purposes, the place where production of any responsive documents "is required." FED. R .CIV. P. 45(d)(3)(A).

## III.     FACTUAL BACKGROUND

Dynamic 3D Geo, an ARG subsidiary, sued Schlumberger and certain affiliated entities for patent infringement on February 4, 2014 in the Western District of Texas.[16] ARG executive Gary Fischman serves as Dynamic 3D Geo's in-house licensing attorney and, among other things, is involved in formulating litigation strategy in Dynamic 3D Geo's underlying Infringement Action against Schlumberger.[17]

Charlotte Rutherford is a former Schlumberger employee who now works for ARG. Ms. Rutherford does not work, and never has worked, for Dynamic 3D Geo, or in connection with the patents it owns that were formerly owned by Schlumberger. Ms. Rutherford has no involvement in the ongoing Infringement Action. Nevertheless, in retaliation for that action, Schlumberger began preparing its State Court suit against Ms. Rutherford just three days after Dynamic 3D Geo's Infringement Action was filed, effectively alleging that Ms. Rutherford leaked Schlumberger trade secrets to ARG for use in the Infringement Action.[18]

Schlumberger twice deposed Ms. Rutherford in the State Court action, and Ms. Rutherford responded to Schlumberger's requests for production and interrogatories. Schlumberger never filed a motion to compel additional written discovery, nor did it subpoena Mr. Fischman or ARG.[19] Despite receiving all of this discovery, Schlumberger lacked clear and specific evidence in support of its claims for misappropriation of trade secrets, conversion, breach of fiduciary duty, and theft against Ms. Rutherford.[20] As a result, Harris County District Judge R.K. Sandill dismissed those claims under the Texas "Anti-SLAPP" statute, which permits disposal of non-meritorious suits that retaliate against individuals for engaging in constitutionally protected conduct such as the right to petition courts.[21] *See* TEX. CIV. PRAC. & REM. CODE §§ 27.001 *et seq*. Judge Sandill awarded Ms. Rutherford $350,000 in attorneys' fees and sanctioned Schlumberger in the amount of $250,000 in

---

[16] Ex. 1 (Infringement Action Complaint).
[17] Ex. 12 (Fischman Declaration) ¶ 3-4.
[18] Ex. 2 (Schlumberger Original Petition in State Court action).
[19] Ex. 12 (Fischman Declaration).
[20] Ex. 3 (Ms. Rutherford's Anti-SLAPP Motion in State Court action).
[21] Ex. 4 (Order of Dismissal in State Court action).

an express attempt to prevent further misconduct by Schlumberger.[22] The State Court action is now on appeal and subject to an automatic stay of discovery.

On August 14, 2014, at a pre-trial hearing in the underlying Infringement Action, Schlumberger informed the court that it intended to file a motion to disqualify Plaintiff's counsel. The court directed that the motion, and a response, be filed, and that the parties "get on the phone with one another and try to work out what you really think you're going to need in the way of protective orders and reasonable discovery to get me to that motion."[23] The court had already admonished Schlumberger "not to overreach on…. really broad-based discovery."[24] Without making any effort to confer with Plaintiff about information needed for the motion, Schlumberger filed its disqualification motion on August 15, 2014.[25]

The disqualification motion is stunningly brazen. In addition to seeking disqualification of Collins Edmonds, Schlumberger seeks to disqualify Mr. Fischman, Ms. Rutherford, and all other attorneys at ARG.[26] Worse, the factual predicate alleged in support of such relief is the same as that rejected as meritless by the court in the State Court action: Ms. Rutherford's former employment with Schlumberger and the notion that Ms. Rutherford unlawfully caused or assisted prosecution of the underlying patent action against Schlumberger by virtue of that employment.[27] In re-alleging this baseless story, Schlumberger further claims that Ms. Rutherford and her purportedly unlawful conduct has so contaminated Plaintiff, its affiliated entities, and its outside counsel, *that the only fair remedy is for the court to dismiss the entire patent action*.[28] Schlumberger's motive is plain. It is desperate to avoid any reckoning on the merits of Plaintiff's allegations of patent infringement, and is willing to try and revive dead claims in support of a diversionary motion having nothing to do with those merits.

Sixteen days after being sanctioned in the State Court action, nearly one month after filing its disqualification motion, and despite the automatic stay of discovery in the state case resulting

---

[22] *Id.*
[23] Ex. 13 (Transcript of August 12, 2014 Hearing) at 37:18-21.
[24] Ex. 14 (Transcript of April 22, 2014 Hearing) at 14:18-20.
[25] Ex. 5 (Schlumberger's Disqualification Motion in Infringement Action).
[26] *Id.* at 1.
[27] Ex. 2 (Schlumberger Original Petition in State Court action).
[28] Ex. 5 (Schlumberger's Disqualification Motion in Infringement Action) at 29-31.

-5-

from the appeal of the State Court's ruling, Schlumberger served Ms. Rutherford, Collins Edmonds, Michael Collins, Mr. Fischman, ARG, two ARG affiliates, and Mr. Vella with identical document subpoenas on or around September 11, 2014.[29]  Ostensibly, the purpose of the subpoenas is to gain information for use in the already-briefed disqualification motion.  Despite the court's clear directives to refrain from overreaching and to confer with Plaintiff first about information needed for the motion, Schlumberger issued these subpoenas without trying to confer with anyone.  The subpoenas' document requests read as a virtual fishing expedition into any communication ever involving Ms. Rutherford and anyone connected to ARG, the discussions and analysis behind the decision to sue Schlumberger for infringement, and confidential details of the entire corporate structure of ARG and its affiliated entities.[30]  However, Schlumberger's disqualification motion has been fully briefed by the parties since September 19 and was originally scheduled to be heard by Judge Yeakel on October 9, 2014.  On September 24, 2014, Schlumberger moved to continue the date of that hearing based on the unavailability of its "lead counsel"—but not because of any supposed need for discovery from the eight third party subpoenas it previously served.[31]

On September 26, 2014, Mr. Fischman and ARG served objections to the subpoenas issued to them.[32]  Counsel for Mr. Fischman and ARG asked Schlumberger's counsel for a telephonic conference concerning the subpoenas and the objections. On October 6, 2014 and again on October 13, 2014, counsel participated in two such teleconferences.  Movant's counsel explained that complete withdrawal of the subpoenas was warranted in light of their issuance in contravention of the court's orders concerning discovery, the harassment inherent in unilaterally imposing such discovery obligations on eight third parties after the State Court dismissed affirmative claims based on the same factual predicate as the disqualification motion, Schlumberger's failure to seek the information from anyone during the State Court action despite having the opportunity to do so, and

---

[29] Ex. 7 (Subpoena to Mr. Fischman); Ex. 8 (Subpoena to ARG); Ex. 9 (Subpoenas to Acacia Research Corporation, Acacia Technologies, LLC, and Matthew Vella).
[30] *Id.* at Request for Production Nos. 1 – 9.
[31] Ex. 16 (Schlumberger's Motion to continue hearing on Disqualification Motion).
[32] Exs. 10 & 11 (Objections).

the subpoenas' facially overbroad document requests, and that Movants would file a motion seeking relief if Schlumberger did not agree to withdraw the subpoenas.[33]

Schlumberger's counsel refused to withdraw the subpoenas on the October 6 call.[34] However, on that call, Schlumberger's counsel, Terrence Connolly, said he would send to Movant's counsel, Travis Brennan, a copy of a brief in opposition to a separate motion to quash that might change Movants' position concerning withdrawal of the subpoenas, and said he may be able to propose some narrowed versions of the document requests in the subpoenas. Movant's counsel said it was unlikely a proposed narrowing of the subpoenas would resolve the disagreements given the nature of Movants' principal objections, but that he would review such information and discuss it with his clients. That evening, Schlumberger's counsel sent to Mr. Brennan a copy of the reference opposition brief, which Movants considered but did not find to make a persuasive case against withdrawal of the subpoenas to them. Schlumberger's counsel only sent proposed new versions of the document requests—conditioned on Movants' agreeing to certain factual stipulations—to Movants' counsel less than three hours before the call scheduled for 2:00 pm CT on October 13. On that call, Mr. Brennan explained that he had not had time to carefully review the proposal or to discuss with Movants, and that the proposed narrowing was effectively moot because Movants' position concerning withdrawal of the subpoenas remained the same. Schlumberger's counsel again refused to agree to that relief. Movants now seek relief from this Court.

---

[33] *Id.*
[34] *Id.*

## IV. ARGUMENT AND AUTHORITIES

### A. Rule 45 *Mandate*s Quashing or Modifying Unduly Burdensome Subpoenas.

The Court "must quash or modify a subpoena that . . . subjects a person to undue burden." FED. R. CIV. P. 45(d)(3)(A)(iv). Whether a subpoena is unreasonably burdensome is determined according to the facts of each case, and the expense and inconvenience to non-parties weighs in favor of quashing the subpoena. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). Rule 45(d) "explicitly authorizes the quashing of a subpoena as a means of protecting a witness from misuse of the subpoena power." FED. R. CIV. P. 45(d) advisory committee's note (1991). In other words, a non-party subpoena is unduly burdensome if "served for the purpose of annoying and harassment and not really for the purpose of getting information." *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 814 (9th Cir. 2003). Additionally, a "facially overbroad subpoena is unduly burdensome." *Turnbow v. Life Partners, Inc.*, No. 3:11-CV-1030-M, 2013 WL 1632795, at *1 (N.D. Tex. Apr. 16, 2013). Schlumberger's subpoenas are both harassing and facially overbroad, making them unduly burdensome on two fronts.

### B. The Subpoenas Are Harassing.

1. Issuance of the Subpoenas Violated Schlumberger's Discovery Obligations in the Underlying Infringement Action.

There is no justification for Schlumberger demanding these documents from Mr. Fischman, ARG, and several affiliated entities when Plaintiff, Dynamic 3D Geo, is the ARG subsidiary prosecuting the patent acquired from Schlumberger. The court in the Infringement Action ordered Schlumberger to confer first with Plaintiff about any information needed in connection with the disqualification motion. Had Schlumberger followed this order, it might have learned that third party subpoenas were unnecessary. Dynamic 3D Geo necessarily has access to documents relating to acquisition and enforcement of its patent assets, including such

documents pre-dating its formation.[35] Schlumberger did not follow that order, and that violation should not be rewarded with documents unnecessarily compelled from third parties in two different states.

> 2. The Subpoenas Seek Documents Purportedly Relevant to a Motion on Which Briefing Is Already Closed in Circumvention of the Automatic Discovery Stay in the State Action Against Ms. Rutherford.

Schlumberger's subpoenas are even more needless given that briefing on Schlumberger's motion to disqualify is complete. Schlumberger filed its motion to disqualify on August 15, 2014, but sought no written discovery related to that motion until nearly four weeks later. Schlumberger's untimely issuance of the subpoenas—combined with the subpoenas' uselessness in light of the closed briefing—further demonstrates that the subpoenas are merely intended to harass Mr. Fischman, ARG, Ms. Rutherford, and the affiliated entities and individuals in California. The hearing for that motion was set for October 9, 2014 and reset at Schlumberger's recent request for a later date in November. That request does not mention needing time to obtain and incorporate discovery. The request to delay the hearing was based only on the unavailability of Mr. Grant. Schlumberger did not need this discovery to fully brief its motion and it does not need it for the hearing.

Again, Judge Yeakel twice ordered Schlumberger "not to overreach" on disqualification-related discovery and to confer with Plaintiff's counsel before seeking "reasonable" discovery related to the disqualification motion. Ignoring Judge Yeakel's orders, Schlumberger refused to confer with *anyone*—let alone just Mr. Fischman and ARG—before pressing ahead with its improper subpoenas. Schlumberger's duplicative and tardy subpoenas appear to be simply another attempt to circumvent the automatic stay of discovery in Schlumberger's State Court action against Ms. Rutherford.

---

[35] Schlumberger may contend that, because Dynamic 3D Geo was not formed until December 2013, it does not have all responsive documents and the other Acacia entities are not really third parties. Even if there were merit to such a contention—and there is not—Schlumberger's unclean hands should preclude the Court from entertaining it.

   3.  **The Subpoenas Seek Irrelevant Documents From No Less Than Six Affiliated Acacia Entities and Individuals, in Addition to Plaintiff's Lead Counsel and Lead Counsel's Firm.**

Schlumberger's harassment spans three time zones and about 1,400 miles. Schlumberger purports to seek the same documents from each of eight different "witnesses." In addition to commanding Ms. Rutherford, her outside counsel, Collins Edmonds, and lead outside counsel Michael Collins, to produce identical documents in Houston, Schlumberger demands the same of movant Mr. Fischman, who, like Ms. Rutherford, works in Houston for the other movant, ARG. Schlumberger has also needlessly opened a second front in its harassment campaign in Southern California, where it is commanding Acacia Research Corporation (ARG's corporate parent), Matthew Vella (Acacia's CEO), and Acacia Technologies, LLC (another Acacia affiliate) to produce copies of the very same documents in Newport Beach.

In light of the State Court's rejection of Schlumberger's theories of intrigue against Ms. Rutherford, the corresponding six-figure sanctions, the discovery stay in place in the State Court action, the closing of briefing on the motion to disqualify, and that motion's transparently desperate attempt to distract from Plaintiff Dynamic 3D Geo's claims of patent infringement, Schlumberger's document demands would be improper were they only directed to Plaintiff itself. Schlumberger's decision to instead burden eight other individuals and entities in two different states with this discovery warfare is an abuse of the discovery process and the authority of multiple U.S. district courts.

   C.  **The Subpoenas Are Overly Broad and Unduly Burdensome in Seeking Any Communications Concerning Ms. Rutherford at Any Time and All Documents Concerning the Corporate Structure of Non-Party ARG and Its Affiliates.**

Among other materials, Schlumberger requests Mr. Fischman's and ARG's communications "concerning Schlumberger" and those "concerning Rutherford's participation in this [patent] Litigation [or] the '319 Patent."[36] Consequently, Schlumberger's requests

---

[36] Exs. 7 and 8 at RFP Nos. 1-7, 9.

seemingly cover communications about everything from transitioning Ms. Rutherford's employee benefit packages, to Schlumberger's state-law claims against her, to privileged attorney communications concerning strategy in the underlying Infringement Action or refuting Schlumberger's allegations regarding "Rutherford's participation in this [patent] Litigation."

Request for production no. 8 in the subpoenas may, even more so than the others, illustrate how far afield Schlumberger has gone. That request calls for documents showing the "organizational structure" of ARG and its corporate affiliates (including, but not limited to, Dynamic 3D Geo) and the identity and role of any individual that has ever acted on behalf of ARG or its affiliates. In other words, Schlumberger is using this "opportunity" to dissect the business plans and structure of Plaintiff's corporate parents and other affiliates. If intimidation and harassment is not the goal of this request, it would appear that the request was erroneously cut and pasted from an entirely different case involving different issues. However, this identical request is included eight times in eight different subpoenas.

Furthermore, Schlumberger's belated offer to narrow its requests does not cure the undue burden imposed by the subpoenas because the requests are still not reasonably restricted to the material issues presented by Schlumberger's motion to disqualify. As just one example, a dispositive issue regarding that motion is whether Ms. Rutherford's work at Schlumberger was substantially related to the Petrel software now accused of infringement. *See J.K. & Susie L. Wadley Research Inst. & Blood Bank v. Morris*, 776 S.W.2d 271, 278 (Tex. App.—Dallas 1989, no writ) (holding that, to disqualify a Texas attorney based on past work, "[a] superficial resemblance between issues is not enough to constitute a substantial relationship"). Of course, the materials describing the scope of Ms. Rutherford's work at Schlumberger are possessed by Schlumberger—not by Ms. Rutherford, Mr. Fischman, or ARG. Because Schlumberger's subpoenas bear no reasonable link to the substantial-relationship question at the heart of Schlumberger's motion to disqualify, the subpoena is facially overbroad and thus unduly burdensome. *See Turnbow v. Life Partners, Inc.,* 2013 U.S. Dist. LEXIS 54306, 2013 WL

1632795 , at *1 (N.D. Tex., Apr. 16, 2013) (quashing subpoena that requested materials "far outside those relevant to the claims at issue").

      **D.**    **Schlumberger's Continuing Harassment Warrants Further Sanctions.**

Six-hundred thousand dollars in sanctions and attorneys' fees later, Schlumberger has yet to learn that its vexatious tactics are far beyond the bounds permitted by federal or Texas courts. Even apart from its past misconduct, Schlumberger has a duty to avoid imposing further burden and expense on Mr. Fischman, Ms. Rutherford, ARG, and the other third parties. *See* FED. R. CIV. P. 45(d)(1). Moreover, this Court "must enforce this duty and impose an appropriate sanction—which may include . . . reasonable attorney's fees." *Id*.

Because Mr. Fischman and ARG have been hauled into court as collateral components of Schlumberger's continued harassment campaign, they respectfully ask this Court to issue a sanction equal to the attorneys' fees they have incurred in responding to the subpoenas. *See id*. (specifying that sanctions equal to attorney's fees are appropriate). Along with their reply brief or at any hearing on this matter, Movants will supply records showing the amount of their then-accrued fees. Awarding these fees will help enforce Schlumberger's compliance with Rule 45. And, additional sanctions are needed to gain the attention of a litigant that chose to press ahead with its harassment campaign just two weeks after incurring a $600,000 penalty for harassing Ms. Rutherford and other witnesses with baseless assertions in retaliation for Plaintiff's serious claims of patent infringement, and in express violation of Judge Yeakel's orders not to overreach and to confer with Plaintiff before seeking discovery. *See Mattel Inc. v. Walking Mt. Prods.,* 353 F.3d 792, 814 *(*9th Cir. Cal. 2003) (affirming sanctions under Rule 45 based on "pattern" of "oppressive" litigation conduct by issuer of subpoena).

      **E.**    **This Court Has Jurisdiction to Quash the Duplicate Subpoena to Acacia Research Group, LLC.**

Under the newly amended Rule 45, "the court for the district where compliance is required mush quash or modify a subpoena that" among other things "subjects a person to undue burden." FED. R. CIV. P. 45(c)(3)(D)(iv). Although the subpoena to ARG purports to command

production of documents in Dallas, this Court may grant both Movants relief because Houston is where any "compliance" would ultimately be "required" were the subpoenas enforceable. *Id*.

Mr. Fischman, an ARG employee, is the licensing executive and in-house attorney providing services to Plaintiff Dynamic 3D Geo in the underlying action. He played a role in the decision to acquire the asserted patents, the decision to assert the patents against Schlumberger, and he coordinates with Plaintiff's outside counsel concerning litigation strategy. In short, if any responsive documents exist, many of them involve Mr. Fischman, or he would know where to find them in or from ARG's Houston office. Mr. Fischman does not have possession, custody, or control of any responsive documents that are not also within the possessions, custody, or control of his employer, ARG, or Plaintiff.

This Court generally has jurisdiction over ARG because ARG maintains a Houston office. In fact, ARG, just like Mr. Fischman, "regularly transacts business in Houston" though its Houston office, and is therefore well within this Court's subpoena power, which can require compliance "100 miles within where a person, resides, is employed, or regularly transacts business in person." FED. R. CIV. P. 45(c)(2)(A). Schlumberger's issuance of the ARG subpoena from Dallas, not Houston, was not borne of any necessity.

Dallas is irrelevant and production of duplicative documents there would only inconvenience ARG. ARG's designated headquarters are in Plano, which is in the Eastern District of Texas, whereas Dallas is in the Northern District. The designated headquarters are more than 240 miles from Houston, which is where much of the activity concerning any responsive documents, if any, are likely to be stored and retrieved for production. If ARG were forced to file its motion to quash in Dallas (where it has no office), that motion would only duplicate the arguments in this one, and would unnecessarily multiply the cost of legal counsel, court fees, and oral argument. In addition, forcing these discovery disputes to be litigated in Houston and Dallas simultaneously is a waste of judicial resources and unnecessarily gives rise to a risk of inconsistent rulings or obligations that would unduly prejudice ARG and its employees. Should this Court find that it lacks jurisdiction to entertain this motion on behalf of

ARG, there is no need to require ARG to pursue relief in Dallas. Instead, ARG will authorize Mr. Fischman to take equal possession, custody, or control of potentially responsive documents in the event that any part of the subpoena is found enforceable.

## V. CONCLUSION

For the reasons stated above, Mr. Fischman and ARG respectfully ask the Court to quash Schlumberger's subpoenas in their entirety and to award sanctions to Mr. Fischman and ARG in an amount equal to the attorneys' fees associated with responding to the subpoenas.

Respectfully submitted,

**ATLAS LAW PLLC**

*/s/ Katharine M. Atlas*
Katharine M. Atlas, *Attorney-in-Charge*
Texas Bar No. 24080777
S.D. Tex. No. 1505751
2525 Robinhood Street
Houston, Texas 77005
Telephone: (713) 561-5544
Facsimile: (832) 201-9874
katlas@atlastriallaw.com

LEAD COUNSEL FOR
MOVANTS/THIRD PARTIES
GARY FISCHMAND AND
ACACIA RESEARCH GROUP, LLC

**OF COUNSEL:**

**STRADLING YOCCA CARLSON & RAUTH, P.C.**

Marc J. Schneider, CA State Bar No. 214609
  mschneider@sycr.com
Travis P. Brennan, CA State Bar No. 238119
  tbrennan@sycr.com
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660-6422
Telephone: (949) 725-4000
Facsimile: (949) 725-4100

OF COUNSEL FOR
MOVANTS/THIRD PARTIES
GARY FISCHMAN AND
ACACIA RESEARCH GROUP, LLC

### CERTIFICATE OF CONFERENCE

I hereby certify that, on October 6, 2014 and October 13, 2014, I conferred by telephone with Terrence Connolly, counsel for Schlumberger Limited, about why Schlumberger should withdraw subpoenas to Gary Fischman, Acacia Research Group, LLC, and affiliated entities and individuals, which relief Mr. Fischman and Acacia Research Group, LLC would move for if necessary. Mr. Connolly responded that his client would not agree to the relief sought.

*/s/ Travis P. Brennan*
Travis P. Brennan

### REQUEST FOR ORAL ARGUMENT

If the Court concludes that oral argument would be helpful in considering the issues herein, Movants respectfully request the opportunity to be heard.

*/s/ Katharine M. Atlas*
Katharine M. Atlas

**CERTIFICATE OF SERVICE**

    I hereby certify that, on October 14, 2014, a true and correct copy of the foregoing document was served by email on the following counsel who issued the subpoena in question:

Paige A. Amstutz
SCOTT, DOUGLASS & MCCONNICO, L.L.P.
600 Congress Street, Suite 1500
Austin, Texas 78701
pamstutz@scottdoug.com

                                        */s/ Katharine M. Atlas*
                                        Katharine M. Atlas